IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NANCY MURPHY and ROBERT STEWART, | : : | |
| Plaintiffs, | : : | CIVIL ACTION<br>No. 22-4674 |
| v. | : : | |
| THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC. d/b/a JEFFERSON HEALTH, | : : : | |
| Defendant. | : | |

**MEMORANDUM**

Schiller, J.                                                                                   October 10, 2023

      Plaintiffs Nancy Murphy and Robert Stewart, individually and for all others similarly situated, claim that Defendant Thomas Jefferson University Hospitals, Inc. ("Jefferson Health") violated their privacy rights by installing advertising technology offered by Meta Platforms, Inc. ("Meta") on Jefferson Health's website, which Plaintiffs used to communicate with their healthcare providers. Plaintiffs allege Jefferson Health violated the Electronic Communications Privacy Act ("ECPA"), *see* 18 U.S.C. § 2510, *et seq.*, and assert state law claims for negligence, and intrusion upon seclusion. Now before the Court are Jefferson Health's Motion to Dismiss for failure to state a claim (ECF 28); Plaintiffs' Opposition thereto (ECF 30); Plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF 29); Plaintiffs' Motion for Leave to File a Reply (ECF 31); and both parties' Notices of Supplemental Authority. (ECF 32 and 34.) For the reasons that follow, the Court grants Jefferson Health's Motion to Dismiss and dismisses Plaintiffs' Amended Complaint with leave to amend. Plaintiffs' Motion seeking to file a proposed Second Amended Complaint is denied. Their Motion for Leave to File a Reply is granted and the Court considers Plaintiffs' proposed Reply (ECF 31-2) as if it had been docketed.

### I.  BACKGROUND

Plaintiffs allege they have used Jefferson Health's website—www.jeffersonhealth.org—since 2018 to communicate with their doctors and other healthcare professionals about past, present, and future health conditions. (Am. Compl., ECF 24 ¶¶ 31, 39.) Their communications contained information about, *inter alia*, their symptoms, appointments, test results, medications, prescriptions, and treatments. (*Id.*) They did not intend to use the website to share personally identifiable patient health information with Jefferson Health or Meta;[1] they did not consent to the interception of that information; and Jefferson Health never notified them that it would intercept that information. (*Id.* ¶¶ 33-35, 41-43.) They also allege Jefferson Health used Meta's Pixel technology—a "snippet of code" that "businesses can insert on the 'back end' of their websites"—to "collect information about what users do on the website [and] what the website does in response," while also "captur[ing] substantive information from users' interactions with the website." (*Id.* ¶ 11.)

Meta analyzes and uses information obtained through Pixel "for its own commercial purposes," including "building more fulsome profiles of its users' preferences and traits" and "selling more-targeted advertisements." (*Id.* ¶¶ 26-27.) Jefferson Health shared Plaintiffs' information with Meta despite Jefferson Health's representations that its website would treat all communications "as private" and obtain "written permission when the uses and disclosures of [information were] for marketing purposes or other activities where [it] receives remuneration in exchange for disclosing such [information]." (*Id.* ¶¶ 17-19.)

---

[1] The Amended Complaint describes Meta as "a Delaware corporation and global technology conglomerate," and asserts that its business "includes operation of Facebook, Instagram and WhatsApp social media sites and related applications." (ECF 24 ¶ 7.)

2

Plaintiffs commenced this putative class action by filing a Complaint and a Writ of Summons in this Court in November 2022. (ECF 1-2.) The Complaint named both Jefferson Health and Meta as Defendants. (*Id.*) In January 2023, Plaintiffs and Meta filed a Joint Motion to Sever and Transfer the claims against Meta to the United States District Court for the Northern District of California, for consolidation with *In re Meta Pixel Healthcare Litigation*, 22-3580 (N.D. Cal.). (ECF 19.)[2] Jefferson Health filed a Motion to Dismiss Plaintiffs' Complaint for failure to state a claim (ECF 23), which the Court denied as moot (ECF 25) given Plaintiffs' timely submission of an Amended Complaint. (ECF 24.) Jefferson Health did not oppose the Joint Motion, and the Court granted it. (ECF 26.)

With the claims against Meta having been transferred to the United States District Court for the Northern District of California, now before the Court is Jefferson Health's Motion to Dismiss the Amended Complaint for failure to state a claim (ECF 28), Plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF 29), and Plaintiffs' Motion for Leave to File a Reply Brief. (ECF 31.) Both Jefferson Health and Plaintiffs also submitted Notices of Supplemental Authority. (ECF 32; ECF 33.)

## II.   STANDARD OF REVIEW

In ruling upon Jefferson Health's Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded allegations in the Amended Complaint and make all reasonable inferences in favor of Plaintiffs. *Oakwood*

---

[2]   This case, which is before the Honorable William H. Orrick of the United States District Court for the Northern District of California, represents the consolidation of several similar putative class actions against healthcare providers—including MedStar Health System, Rush University System for Health, and UK Healthcare—that allegedly used Meta Pixel on their patient portals. *See In re Meta Pixel Healthcare Litigation*, 2022 WL 17869218, at *1-6 (N.D. Cal. Dec. 22, 2022) (denying plaintiffs' request for a preliminary injunction).

*Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021). A well-pleaded complaint "require[s] only a short and plain statement of the claim showing that the pleader is entitled to relief" and need not contain "detailed factual allegations." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-34 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To survive Jefferson Health's Motion, Plaintiffs must allege enough factual matter, taken as true, to suggest the required elements of their claims and raise a reasonable expectation that discovery will reveal evidence of these elements. *Id.*; *see also Oakwood Lab'ys*, 999 F.3d at 904. In turn, the Court must "draw on its judicial experience and common sense" to find, at minimum, "a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

While "[t]he plausibility standard is not akin to a probability requirement," it requires a pleading to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotations omitted). A pleading that merely "tenders naked assertion[s] devoid of further factual enhancement is insufficient." *Id.* (citation and internal quotations omitted). Said otherwise, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

#### A. The Amended Complaint

For the reasons that follow, the Court grants Jefferson Health's Motion to Dismiss the Amended Complaint (ECF 24) without prejudice.

##### 1. Plaintiffs Do Not Allege Sufficient Facts to State an ECPA Claim

Jefferson Health contends Plaintiffs' ECPA claim must be dismissed because they "fail to allege facts showing that the substantive contents of their . . . communications have ever been

4

transmitted to Meta." (ECF 23 at 6.) The ECPA prohibits "a person or entity providing an electronic communication service to the public" from "intentionally divulg[ing] the contents of any communication (other than one to such person or entity, or an agent thereof) . . . to any person or entity other than an addressee or intended recipient of such communication," or their agent. 18 U.S.C. § 2511(3)(a). It further defines "contents" as "any information concerning the substance, purport, or meaning" of the communication at issue, *id.* § 2510(8), and "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." *Id.* § 2510(15).

The Amended Complaint broadly refers to "the contents of all electronic communications" between Plaintiffs and Jefferson Health, "a wide range of personal, private healthcare information," and "personally-identifiable patient health information." (ECF 24 ¶¶ 56-57, 60, 61.) According to Plaintiffs, the communications at issue pertained to their "medical symptoms, conditions, and concerns, medical appointments, medical tests and test results, doctors' visit notes, medications and treatments, and health insurance and medical bills." (ECF 24 ¶ 60.) Under *Iqbal*, however, these vague allegations amount to "'no more than conclusions, [and] are not entitled to the assumption of truth.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). More is required to withstand dismissal.

A Third Circuit case is instructive. In *Burtch v. Milberg Factors, Inc.*, the trial court granted a motion to dismiss where an antitrust plaintiff alleged that defendants "regularly and unlawfully shared highly confidential information relating to [certain] customers and clients." No. 07-556, 2009 WL 1529861 (D. Del. May 31, 2009). The Third Circuit affirmed, finding that the phrase "highly confidential information" was too conclusory to satisfy *Twombly*. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 323, 225 (3d Cir. 2011). While Plaintiffs' Amended Complaint uses

5

language that is slightly more precise than the language in *Burtch* (*see* ECF 24 ¶ 60), it still lacks enough facts to raise a right to relief "above a speculative level." *Twombly*, 550 U.S. at 555. Plaintiffs do not allege, for example, that any specific test results, diagnoses, or sensitive messages were intercepted or improperly disclosed. To provide Jefferson Health with sufficient notice of its alleged misconduct, Plaintiffs must offer more detailed descriptions of the communications and information that they assert were intercepted.

Jefferson Health also contends that Plaintiffs fail to allege interception under the ECPA. It characterizes Plaintiffs' allegation that "Jefferson Health was *not* the recipient" of the communications as "nonsensical, implausible, and contradicted by [their] other allegations." (ECF 28 at ECF p. 11) (emphasis in brief) (*see also id.* n.5 ("[T]here is no feature for any direct communications on the website with a Jefferson Health doctor, nurse or any other medical staff").) While Plaintiffs unquestionably assert that they communicated directly with doctors and medical staff, (*e.g.*, ECF 24 ¶ 56 (referencing "communications occurring between Plaintiffs . . . and their doctors and medical office staff on Jefferson Health's web properties"),) they do not make any specific averments to substantiate that assertion. They do not offer any facts with respect to those individuals' identities or the timing or number of those communications. Accordingly, even if Plaintiffs had submitted a more detailed description of the "wide range of personal, private healthcare information" at the heart of this case, (ECF 24 ¶ 60,) the Court would not consider these allegations "well-pleaded," and it therefore need not accept them as true. *Oakwood Lab'ys*, 999 F.3d at 904.

Plaintiffs' ECPA claim cannot proceed absent sufficient allegations to show Jefferson Health intercepted communications.[3]

---

[3]    Jefferson Health also maintains Plaintiffs' ECPA claim cannot proceed because Jefferson

6

### 2. Plaintiffs Do Not Adequately Plead Causation and Damages in Support of Their Negligence Claim

Plaintiffs also fail to state a negligence claim under Pennsylvania law. To advance their claim they must allege sufficient facts to show that (1) Jefferson Health owed a duty to conform to a certain standard for the protection of others against unreasonable risks; (2) Jefferson Health failed to conform to that standard or breached its duty; (3) a causal connection exists between Jefferson Health's conduct and the resulting injury; and (4) Plaintiffs suffered actual loss or damages. *See Jones v. Plumer*, 226 A.3d 1037, 1039 (Pa. Super. Ct. 2020) (quoting *Brewington for Brewington v. City of Phila.*, 199 A.3d 348, 355 (Pa. 2018)).

### a. Duty

Though the Amended Complaint plausibly alleges that Jefferson Health's publication of its privacy policy established a duty of care, the Court might resolve the question differently once there is a more fully developed factual record. Plaintiffs assert that Jefferson Health assumed a duty of care with respect to their personal information through its "Privacy Practices" and "Patient Rights Statement."[4] (ECF 24 ¶¶ 89-91.) Jefferson Health responds that its privacy policies merely

---

Health is not the provider of an "electronic communication service" under Section 2511(3)(a) of the ECPA. (ECF 28 at ECF pp. 9-10.) Several federal district courts have considered the question and concluded that "[a] company that merely utilizes electronic communications in the conduct of its own business is . . . not the provider of the service to the public" in the context of the ECPA. *See Gamer v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 1003-04 (W.D. Wash. 2022) (collecting cases); *see also Allen v. Novant Health, Inc.*, No. 22-697, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023) (dismissing a complaint dealing with a website, "MyChart," that allowed patients to communicate with healthcare providers); *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005) ("[A] company . . . does not become an 'electronic communication service' provider simply because it maintains a website that allows for the transmission of electronic communications between itself and its customers."). The Court need not reach this question—which appears to be one of first impression in this jurisdiction—considering its conclusions above.

4       The former states that Jefferson Health would "use or disclose" patients' personal health information "only when [they] give [their] specific written authorization and would not disclose the same "for marketing purposes or other activities where [Jefferson Health] receive[s]

demonstrate compliance with an "administrative requirement" and do not independently create a duty. (ECF 28 at ECF p. 17 (citing *Bailey v. Hosp. of the Univ. of Pa.*, 1481 EDA 2020, 2021 WL 4958772, at *7 (Pa. Super. Ct. 2021).) Accordingly, Jefferson Health argues that Plaintiffs fail to plead facts showing a viable duty of care.

Jefferson Health's argument notwithstanding, the Amended Complaint does plausibly allege Jefferson Health owed Plaintiffs a duty of care via the publication of its privacy policies.[5] Whether a duty exists is a question of law for the Court. *See New Prime, Inc. v. Brandon Balchune Constr.*, No. 14-2410, 2017 WL 2114556, at *6 (M.D. Pa. Apr. 27, 2017) (citing *Winschel v. Jain*, 925 A.2d 782, 796 (Pa. Super. Ct. 2007)). The Pennsylvania Supreme Court has identified five factors to be considered in determining whether a duty exists in a particular case: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *See Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168-69 (Pa. 2000). Here, it would be premature to conclude, as a matter of law, that Pennsylvania would not recognize a duty on the facts presented in the Amended Complaint. "Whether a duty exists is ultimately a question of fairness," *Branjord v. Hopper*, 688 A.2d 721, 723 (Pa. Super. 1997), and "[o]nly when the question of foreseeability is

---

remuneration without written permission." (ECF 24 ¶ 89) (quoting https://www.jeffersonhealth.org/privacy-practices.html.) The latter states that patients have the right to "discuss [their] care in places designed to protect [their] privacy," and can "expect all communications and records related to care . . . to be treated as private." (*Id.* ¶ 90) (quoting https://www.jeffersonhealth.org/your-health/patients-guests/patients-rights-responsibilities/patient-rights-statement).

[5]  While Plaintiffs refer to Jefferson' Health's privacy policies as "promises," (ECF 24 ¶ 19,) they do not otherwise present their claim as one for breach of contract. Accordingly, the Court assumes they seek recovery in tort only.

8

undeniably clear may a court rule as a matter of law that a particular defendant did not have a duty to a particular plaintiff." *J.E.J. v. Tri-County Big Brothers/Big Sisters*, 692 A.2d 582, 584 (Pa. Super. Ct. 1997). Accepting Plaintiffs' allegations as true, they have plausibly claimed that they relied to their detriment upon Jefferson Health's representations about how it would handle their personal information, and that Jefferson Health knew or should have known about such reliance. Without the "benefit of further evidence that can provide further basis [*sic*] to assess the nature of the relationship between the parties and their dealings to determine . . . whether [one] owed a legally-recognized duty to [the other]," *New Prime, Inc.*, 2017 WL 2114556, at *6, the Court declines to close that door at this stage.[6] The Court will not dismiss Plaintiffs' negligence claim for failure to sufficiently allege the existence of a duty.

   b. **Causation**

Plaintiffs' causation allegations, however, are not sufficiently specific under *Twombly* and *Iqbal*. They allege that Jefferson Health was "a third party with respect to its interception, transmission and commercial use" of their "communications with their doctors and medical office staff about personally-identifiable patient health information," because Jefferson Health "was not an intended recipient of . . . these communications." (ECF 24 ¶ 95.) Even accepting that framing, Plaintiffs do not make any specific averments to substantiate their allegations. They offer no details

---

[6] Plaintiffs also assert that Jefferson Health owes them a duty "under multiple federal laws," namely the Health Insurance Portability and Accountability Act ("HIPAA") and its implementing regulations. (ECF 24 ¶ 92 (citing 42 U.S.C. § 1320; 45 C.F.R. §§ 164.501, 164.508(a)(3), 164.514(b)(2)(i).) In addition, they contend Jefferson Health owes them a duty "under Pennsylvania law." (ECF 24 ¶ 93 (*citing, e.g.*, 28 Pa. Code § 115.27).) Jefferson contends neither HIPAA nor Pennsylvania law support Plaintiffs' negligence claim. (ECF 28 at ECF pp. 16-17) (citations omitted). The Court need not decide whether either can serve as the source of a duty owed to Plaintiffs because they have sufficiently alleged Jefferson Health's privacy policy establishes the duty required to proceed with their claim.

about the identity of any intended recipient or the content, timing, or number of the alleged communications. Their allegations are no more than "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678-79.

### c. Actual Loss

Plaintiffs' assertion that they have incurred actual loss or damages is also insufficiently specific to satisfy federal pleading standards. Under *Iqbal*, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678. Plaintiffs allege that they have "suffered damages," including "embarrassment, humiliation, emotional harm, and distress" (ECF 24 ¶ 96), but the Court cannot consider these boilerplate allegations in the absence of facts to support them. *See Rosenberg v. C.R. Bard, Inc.*, 387 F. Supp. 3d 572, 582 (E.D. Pa. 2019); *Lapensohn v. Hudson City Sav. Bank*, No. 19-4576, 2021 WL 1581402 (E.D. Pa. Apr. 21, 2021) (granting a defendant's motion to dismiss where plaintiffs alleged in conclusory fashion that they "suffered substantial damages"). Plaintiffs fail to describe how they sustained these alleged "damages" or otherwise substantiate their existence. Plaintiffs must articulate their harm or actual loss with more precision to "nudge" their negligence claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3. Plaintiffs Do Not Sufficiently Plead a Claim for Intrusion Upon Seclusion

Plaintiffs also fail to state a claim for intrusion upon seclusion. To do so, they must allege facts sufficient to show "conduct demonstrating 'an intentional intrusion upon the seclusion [of their] private concerns which was substantial and highly offensive to a reasonable person." *Berk v. J.P. Morgan Chase Bank*, No. 11-2715, 2011 WL 4467746, at *6 (E.D. Pa. Sept. 26, 2011) (citing *Boring v. Google Inc.*, 362 F. App'x 273, 278-79 (3d Cir. 2010) (quoting *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 247 (Pa. 2002)). They must allege enough

"facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities." *Id.*

Plaintiffs allege that Jefferson Health "intentionally intruded into communications between Plaintiffs . . . and their doctors and medical office staff" in a manner that is "highly offensive to a reasonable person because it was not an intended recipient of . . . these communications." (*Id.* ¶¶ 100, 105.) As a result, they allege they have: (1) suffered "emotional distress;" (2) been denied portions of the "substantial revenue" and "commercial benefit" Jefferson Health derived from its scheme; and (3) been denied "the full value of the medical services for which they paid, which included a duty to maintain confidentiality of their patient information." (*Id.* ¶ 112.) Jefferson Health responds that "the actual alleged intrusion upon patient's seclusion, if any, [was] carried out by Meta, not Jefferson Health." (ECF 28 at ECF p. 20.) It also contends that "[b]y no stretch of the imagination" does the behavior Plaintiffs allege "equate to highly offensive conduct," and that "Plaintiffs do not allege any facts that would permit the Court to draw reasonable inferences of harm or injury, such as what specific [patient health information] was transmitted." (*Id.* at 21-22.)

Plaintiffs fail to state a claim for intrusion upon seclusion for at least three reasons. First, by failing to describe the nature of the patient health information at issue (ECF 24 ¶ 100 (offering vague descriptions of the contents of the communications)), identify the intended recipients (*Id.* ("their doctors or medical office staff")), or otherwise offer specifics regarding the purportedly objectionable conduct, Plaintiffs raise no "more than a sheer possibility that [Jefferson Health] has acted unlawfully." *Iqbal*, 556 U.S. at 678-79. They have not supplied a sufficient factual foundation upon which a reasonable juror could conclude that Jefferson Health committed the tort of intrusion upon seclusion.

Second, and relatedly, without more information about the contents of Plaintiffs' communications and the parties to whom those contents were disclosed against Plaintiffs' wishes, their allegations that Jefferson Health's conduct was "highly offensive" similarly fall short of the mark. While the question of what might be "highly offensive" to a "reasonable person" is a question of fact for a jury, it is generally accepted that a court must first determine whether a certain threshold of offensiveness exists to support the cause of action in the first place. *See Berk v. J.P. Morgan Chase Bank, N.A.*, No. 11-2715, 2011 WL 4467746, at *7 (E.D. Pa. Sept. 26, 2011);[7] *see also Freeland v. Financial Recovery Serv., Inc.*, 790 F. Supp. 2d 991, 995 (D. Minn. 2011). Here, Plaintiffs have not set forth enough factual matter to cross that threshold.[8]

Finally, as with their negligence claim, Plaintiffs fail to describe how they sustained their alleged damages for intrusion upon seclusion or otherwise substantiate the existence of those damages. Their reference to emotional distress is conclusory and unsupported by factual matter. (*See* ECF 24 ¶ 112 ("Learning [about Jefferson Health's intrusion] . . . has caused Plaintiffs and the Class members to suffer emotional distress.").) Similarly, Plaintiffs broadly allege that

---

[7] *Compare Desmond v. Phillips & Cohen Assoc., Ltd.*, 724 F. Supp. 2d 562, 568 (W.D. Pa. 2010) (allowing intrusion upon seclusion claim to go to the jury based on debt collector's fourteen calls, four letters, and several messages left on the plaintiff's answering machine, holding that whether the intrusion was "highly offensive to a reasonable person is a question of fact for the jury to decide"), *with Stuart v. AR Res, Inc.*, No. 10-3520, 2011 WL 904167 (E.D. Pa. Mar. 16, 2011) (dismissing intrusion upon seclusion claim despite defendant debt collector's persistent phone calls and profane and abusive language because of the failure to plead the number or substance of calls).

[8] Plaintiffs submit as supplemental authority the recent opinion in *Doe v. Regents of Univ. of Cal.*, where the court explained that "[p]ersonal medical information is understood to be among the most sensitive information that could be collected about a person," and saw "no reason to deviate from that norm" when it declined to dismiss the plaintiff's intrusion upon seclusion claim. No. 23-0598, 2023 WL 3316766, at * 6 (N.D. Cal. May 8, 2023). In contrast to this case, however, the plaintiff in *Doe* specifically alleged that she entered data into a web portal related to her heart issues and high blood pressure, and later received advertisements on Facebook for blood pressure medication. *See id.* at *2. Plaintiffs' Amended Complaint lacks similar details.

Jefferson Health "derived substantial revenue" from selling their patient health information and that it obtained some "commercial benefit" from its installation of Pixel on Jefferson Health's website, but do so without identifiable support. (*Id.*)

To the extent that Plaintiffs seek damages in the context of their intrusion upon seclusion claim because "Jefferson Health . . . failed to provide [them] with the full value of the medical services for which they paid, which included a duty to maintain the confidentiality of their patient information," it appears their cause of action arises not in tort, but in contract. (*Id.*) In Pennsylvania, "the gist of the action doctrine bars tort claims against contracting parties where the claim 'is, in actuality, a claim against the party for breach of its contractual obligations.'" *Emmes Co., LLC v. SAP America, Inc.*, No. 21-0019, 2021 WL 3271253, at *5 (E.D. Pa. July 29, 2021) (quoting *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 53 (Pa. 2014)). The mere labeling of a claim is not controlling, and courts must "look to the nature of the duty the defendant allegedly breached." *Id.* (citing *Sales Benchmark Index LLC v. DeRosa*, No. 18-2680, 2018 WL 3918090, at *4 (E.D. Pa. Aug. 16, 2018)). Said otherwise,

> [i]f the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract . . . then the claim is to be viewed as one for breach of contract[.] If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id.* (quoting *Bruno*, 106 A.3d at 68). Because Plaintiffs' Amended Complaint links this aspect of their claim for damages to the "full value" of their bargained-for exchange for medical services—as opposed to a broader social duty owed to society generally, independent of any particular transaction—this basis for damages cannot support their tort claim for intrusion upon seclusion (as opposed to a claim for breach of contract). (ECF 24 ¶ 112.)

### B. Leave to Amend and the Proposed Second Amended Complaint

Plaintiffs move for leave to file a Second Amended Complaint. (ECF 29.) Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend a complaint] when justice so requires," which "certainly includes amendment to cure defective allegations." *Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (holding that a district court considering a 12(b)(6) motion "must permit a curative amendment unless such an amendment would be inequitable or futile") (citation omitted)).

Upon review of Plaintiffs' proposed Second Amended Complaint (ECF 29-3), it does not cure the Amended Complaint's deficiencies. However, it is not clear that they would be unable to cure these deficiencies in subsequent pleadings. Accordingly, the Court dismisses the motion for leave to file the proposed second amended complaint and grants Plaintiffs further leave to amend to the extent they can allege sufficient facts to state their claims consistent with this Memorandum.

### IV. CONCLUSION

For the foregoing reasons, Jefferson Health's Motion to Dismiss is granted (ECF 28). Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted. Plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF 29) is denied because the proposed Second Amended Complaint would still fail to state a claim for relief. However, Plaintiffs are granted leave to further amend their Amended Complaint to allege enough facts to state their claims. The Court also grants Plaintiffs' Motion for Leave to File a Reply (ECF 31) and has considered their proposed Reply (ECF 31-2) as if it had been docketed.

An appropriate Order follows.