IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NANCY MURPHY and ROBERT STEWART,<br><br>                 Plaintiffs,<br>        v.<br><br>THOMAS JEFFERSON UNIVERSITY HOSPITALS INC. d/b/a JEFFERSON HEALTH,<br>                 Defendant. | Case No. 22-cv-4674-CMR |

**REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT,
SUBSTITUTE NAMED PLAINTIFF, AND COMPEL DISCOVERY RESPONSES**

Nancy Murphy and Robert Stewart ("Plaintiffs") respectfully submit the following Reply in support of their pending Motion to Amend, Substitute, and Compel [Doc. 61].

**I.    INTRODUCTION**

This Court consistently takes a liberal approach to allowing the amendment of pleadings under Rule 15. In this case, Plaintiffs seek leave to substitute a new Named Plaintiff who alleges the same material facts, claims, and theories of liability, pleads the same claims presented in the operative Complaint against the same Defendant, and has served full discovery responses five weeks ago. Plaintiffs filed their Motion before Defendant produced any discovery, well before the class certification filing date, without any suggestion of bad faith or futility, without proof of undue delay, and consistent with principles of fairness and efficiency. Defendant opposes this relief on technical jurisdiction and standing grounds, relying on incorrect assumptions that Named Plaintiffs' claims are invalid and that they do not intend to remain in the Class. As discussed below, these arguments are not supported by any evidence, holding, or Order in this case, so do not supply any rational or legal grounds for denying Plaintiffs' Motion.

1

## II. REPLY ARGUMENT

### A. Plaintiffs Have Standing To Seek Substitution, And Their Claims Do Not Suffer From Proven Jurisdictional Defects

Defendant's core argument is that the Court should not allow Plaintiffs to seek substitution, because they "do not have standing to proceed with their claims." Def. Opp., pp. 5-9 [Doc. 63]. This argument is simply wrong, both factually and legally, and relies on principles and cases having no factual or legal similarity to this action.

Nancy Murphy and Robert Stewart were the Plaintiffs in this action on the day they filed their Motion, and remain the Plaintiffs today. Plaintiffs have not agreed to withdraw their claims, the Parties have not stipulated to any such withdrawal, and the Court has not made any finding of fact relating to Plaintiffs' claims, or entered any order concerning the merit of Plaintiffs' claims, their participation in this action, or their status as Plaintiffs. For all these reasons, Plaintiffs are the only party-plaintiffs in this action and it is their duty to diligently represent the putative Class. *See, e.g., Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, 623 F. Supp. 3d 470, 511 (E.D. Pa. 2022) (named plaintiffs must provide fair and adequate representation); *Barenbaum v. Hayt, Hayt & Landau, LLC*, 2019 WL 4305761, *13 (E.D. Pa. Sept. 10, 2019) (named plaintiff must diligently perform its fiduciary duties to the class).

The cases cited in Plaintiffs' opening Memo, describing the substitution of unnamed class members for named plaintiffs as a routine, ministerial task to be "freely" permitted remain relevant and persuasive authority guiding the Court's decision. Plaintiffs' Mem., pp. 3-5 [Doc. 61].

Generally, the cases cited in Defendant's Opposition are not factually or procedurally analogous in that they concern unrelated procedural and jurisdictional issues, involve parties seeking to materially change theories or claims, or include requests to substitute new parties after the existing plaintiff's claims have been resolved or dismissed. For example, Defendant cites

*Hayes v. Wal-Mart Stores, Inc*., 725 F.3d 349 (3d Cir. 2013), for the proposition that "plaintiff has no standing to proceed and the case *must be dismissed*." Def. Opp. at p. 5 (emphasis in original), *citing Hayes*, 725 F.3d at 361. However, the Third Circuit in *Hayes* actually held the plaintiff would remain in the action and his claims would survive pending discovery and a factual determination on "whether Hayes falls within the amended class definition and sustained an injury." *Id.* Because Plaintiffs have not consented to withdraw or dismiss their claims and the Court has not entered any ruling about the Plaintiffs' status in this action, *Hayes* actually stands for the proposition that Plaintiffs are Parties in this action until these issues are resolved.

Defendant cites *Hildebrand v. Dentsply Int'l, Inc.,* 2011 WL 4528343 (E.D. Pa. Sept. 30, 2011) to suggest Plaintiffs lack standing and should be denied leave to amend. In an earlier opinion in that action, the court dismissed two named plaintiffs, Hildebrand and Jaffin, because they "practice dentistry in a corporate capacity rather than as individuals, [so] lack standing to bring their claims or serve as class representatives." *Hildebrand*, 264 F.R.D. 192, 196 (E.D. Pa. 2010). These dismissed plaintiffs did not challenge this ruling and thereafter, in the opinion Defendant cites, were denied "leave to file an amended complaint to substitute their corporate practices as named Plaintiffs." *Hildebrand,* 2011 WL 4528343 at *1-2. The key fact, not present here, was that federal jurisdiction in *Hildebrand* was based on diversity, and plaintiff Jaffin was the only out-of-state participant, so dismissal of his claim meant that "diversity of citizenship and therefore subject matter jurisdiction never existed." *Id.* at *2-3. This Court has not dismissed Plaintiffs' claims, and Plaintiffs' substitution request does not present any issues of subject matter jurisdiction, so the holding in *Hildebrand* is not relevant here.

Defendant cites *Lusardi v. Xerox Corp*., 975 F.2d 964, 973 (3d Cir. 1992) to suggest "when a plaintiff moves to substitute a sole class representative before moving for certification,

substitution is appropriate only if the claim remains live." Def. Opp. at p. 8, *citing Lusardi*, 975 F.2d at 973. *Lusardi* has a complex, nine-year procedural history, including multiple amended complaints, rulings by three different judges, two appeals, conditional certification of a nationwide ADEA class, decertification of that class, a settlement, and a stipulated dismissal of the plaintiffs' claims. *Id.* at 967-969. Two months after the case was resolved, the settled/dismissed plaintiffs moved to certify four new subclasses and intervene new plaintiffs which, after extensive litigation, led to orders declining jurisdiction over the new class motion and denying leave for the intervention complaint. *Id.* at 969-973. In a third appeal, the Circuit Court discussed how the "settlement of a plaintiff's claims moots an action" both before a class is certified (when no justiciable claims exist) and afterward (when the class has a separate legal status from the named plaintiffs), *id.* at 974, but obviously considered a situation where the named plaintiffs had settled their claims, stipulated to a court-approved dismissal, and were asking to assert new claims for other people. Given the lack of procedural and legal parallels, the reasoning and holding of *Lusardi* are not relevant here.[1]

---

[1] Defendant's Opposition also references a hodge-podge of foreign decisions from 1947 to 2011, to claim that "multiple courts, in multiple contexts, have denied leave to amend to add additional parties where the original plaintiff lacked standing." *See* Def. Opp. at p.6. *Summit, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278 (5th Cir. 1981), is a good example of how irrelevant all these cases are. In *Summit*, the indirect purchaser plaintiff's standing to bring an antitrust claim against defendants was undermined by the U.S.S.C.'s *Illinois Brick* decision. *Summit*, 639 F.2d at 1282. After defendants moved for summary judgment, the plaintiff filed an amended complaint with new direct-purchaser plaintiffs, for a restructured, direct-purchaser class, and claims conformed to *Illinois Brick*. *Id.* The district court struck the amended complaint and the Circuit Court affirmed, noting "The circumstances of this case are unique… The order of the district court is not contrary to the liberal use of the amendment process in federal practice. Nor is our decision in this case a restriction or limitation on the amendment procedure as it pertains to adding parties plaintiff or curing a defect in the cause of action"). As Plaintiffs' Motion makes clear, they are only seeking to substitute a Named Plaintiff in this action, not materially change any of the facts, theories, or claims previously pled, so *Summit* (and Defendant's other cases) has no bearing.

Defendant also argues Named Plaintiffs' claims suffer from a "jurisdictional deficiency," because, following *Lusardi*, "District Courts within the Third Circuit" have imposed a "liveness requirement" under which pre-certification plaintiff substitutions are allowed only where "the named party being replaced confirms that she intends to remain a member of the putative class." Def. Opp. at p. 8. Defendant cites two cases to support this "liveness" requirement: *Ceisler v. First Pa. Corp.*, 1991 WL 83108, *4 (E.D. Pa. May 13, 1991), a decision entered 17 months <u>before</u> *Lusardi* (so obviously does not "follow" *Lusardi*), and *Wilson v. Quest Diagnostics Inc.*, 2020 WL 401814 (D.N.J. Jan. 24, 2020). Def. Opp. at pp. 8-9. The facts, issues, and analysis in *Wilson* (which granted a pre-class-certification motion for leave to amend the complaint to substitute a new named plaintiff) are closer to the instant matter than any of Defendant's other cited cases.

In *Wilson*, the defendant opposed the plaintiffs' request for leave to amend and substitute, arguing they:

> should not be permitted to amend the complaint *via* Rule 15 to substitute new lead plaintiffs, but rather, should first be required to make a motion to voluntarily dismiss the case pursuant to Federal Rule of Civil Procedure 41, and then [the] new plaintiffs should start a new action.

*Wilson,* 2020 WL 401814 at *2 (D.N.J. Jan. 24, 2020).[2] The court soundly rejected this argument, explaining class action plaintiffs are routinely allowed leave to amend and substitute:

> Numerous courts in this Circuit and around the country routinely allow pre-certification substitution of lead plaintiffs in a variety of circumstances… Plaintiffs correctly observe that the substitution of class representatives is allowed at the pre-certification stage… [and] debunk[ing] defendant's argument that a full dismissal is required as belied by the great weight of authority.

*Wilson*, 2020 WL 401814 at *2.

---

[2] Although Defendant has not expressly said so, this is the most obvious motivation behind its current Opposition arguments.

5

The plaintiff in *Wilson* sought leave to amend her complaint and substitute a new named plaintiff because she was "suffering from a serious and extended illness" that "prevents her from serving as a class representative in the case," without indicating how long she would remain in the case. *Wilson*, 2020 WL 401814, at *1. Despite the uncertain duration of the plaintiff's post-substitution involvement, the court freely granted her motion, noting that, because she "*intends* to become part of the class… her claims persist and the case or controversy remains active." *Id.* at *3 (emphasis added). Thus, *Wilson* does <u>not</u> hold a former named plaintiff <u>must remain</u> in the class for the duration of the case to allow substitution. Instead, it takes a holistic approach to the substitution inquiry, considering factors that include the procedural posture of the case, the status of discovery, the considerations identified in Rule 15 (prejudice to the opponent, undue delay, and bad faith), considerations relating to judicial efficiency and case management, and whether the plaintiff <u>presently intends to remain</u> in the class. *Wilson*, 2020 WL 401814 at *3-4. All the considerations discussed in *Wilson* support Plaintiffs' substitution request in this case.

Defendant's Opposition also rests heavily on incorrect assumptions that "Plaintiffs are not members of the putative class" and "Plaintiffs do not have standing to proceed with their claims." Def. Opp. at pp. 1, 5, 9, 11. These assumptions are not supported by any record evidence. *Id.* To be clear, Plaintiffs' counsel suspect Named Plaintiffs' claims might be deficient in some respects, so made a proposal to defense counsel (offering to withdraw their claims in return for a stipulation substituting Ms. Thorpe) to avoid issues "down the road" that could unnecessarily delay this litigation. *See* Scully Dec., Ex. 2, p.2 [Doc. 64]. Because defense counsel did not accept this proposal, Named Plaintiffs are not obligated to withdraw their claims. Further, none of these events justify Defendant's self-serving speculation about Named Plaintiffs' standing or class membership where the Parties have not engaged in any discovery concerning the Named Plaintiffs'

claims or briefed any issues surrounding any (unidentified) deficiencies, and the Court has not evaluated or ruled on any aspect of this inquiry.[3] The Named Plaintiffs have not admitted they "do not have viable claims," or that "they are not members of the Class." Def. Opp. at pp. 1-2, 5-6, 9, 11-12 [Doc. 63]. Nor has the Court found the Named Plaintiffs' claims defective, or made any ruling on their representative status – or any individual or class issue. Because Defendant has refused to produce discovery on their claims and the final Class definition is not known, Named Plaintiffs presently intend to remain in the Class but (like Ms. Wilson) need not promise to remain in the Class through the end of the case for substitution to be allowed. Because *Hayes, Hildebrand, Lusardi,* Wilson, and the cases discussed in Plaintiffs' opening Memo all suggest Defendant's standing and jurisdictional arguments are premature and exaggerated, the Court should grant Plaintiffs' Motion.

### B. Plaintiffs Have Met The Rule 15 Criteria Supporting Leave To Amend

Anticipating the Court will not buy its unfounded standing and jurisdictional arguments, Defendant also questions whether Plaintiffs' request for leave to amend is timely under Rule 15. Def. Opp. at pp. 9-11 ("Plaintiffs' counsel do not provide any information as to the specific date when they first learned that the named Plaintiffs did not have viable claims"). This question is easily answered.

In their opening Memo, Plaintiffs explained:

> While this is not Plaintiffs' first request to amend, they are presenting it in a timely manner, at the outset of discovery, <u>promptly upon learning of the defects in their claims and identifying a qualified substitute Plaintiff</u>, before Defendants have provided any discovery responses and [] in time to avoid a delay to the Court's current class certification briefing schedule

---

[3] Fleshing this issue out, it is also possible Defendant has refused to produce discovery relating to the Named Plaintiffs to deprive them of information that could cure issues relating to their claims.

Plaintiffs' Mem., p.5 [Doc. 61] (emphasis added).

To the extent more detail is needed, on November 27, 2024, the Court entered its Initial Scheduling Order, approving the Parties' request for bifurcated discovery [Doc. 59]. On December 9, 2024, Defendant served its class discovery requests. Cohen Dec., ¶2 (Ex. A). In mid-December 2024, Plaintiffs' counsel scheduled and held a meeting to review technical issues relating to the electronic discovery at issue in these requests. *Id.* at ¶3. In late December 2025, Plaintiffs' counsel started reaching out to the Named Plaintiffs to schedule and conduct phone and video conferences to collect documents and information for their discovery responses, and began drafting those responses. *Id.* at ¶4. Several phone and video conferences were needed to look for, identify, discuss, collect, and confirm all the necessary/responsive documents and information relating to Named Plaintiffs' claims and interactions with Defendant's web properties. *Id.* at ¶5. On January 7, 2025, Plaintiffs' counsel asked to extend their discovery response deadline to January 23, 2025. *Id.* at ¶6. In early February 2025, as Plaintiffs' counsel learned more about the Named Plaintiffs' engagement with Defendant's web properties, they realized some aspects of these interactions could subject them to arguments undermining their claims, damages and/or status as Class representatives. *Id.* at ¶7. By mid-February 2025, Plaintiffs' counsel began to contact and vet potential replacement Plaintiffs and, by mid-March 2025, identified Ms. Thorpe as a strong candidate and began to collect documents and information relating to her claims and prepare her discovery responses. *Id.* at ¶8. On March 31, 2025, Plaintiffs' counsel served Ms. Thorpe's completed Document Request and Interrogatory Responses on defense counsel with a link to her document production, and asked defense counsel to stipulate to her substitution. *Id.* at ¶9. On April 2, 2025, defense counsel refused to stipulate to Ms. Thorpe's substitution. *Id.* at ¶10. On April 9, 2025, Plaintiffs' counsel filed the instant Motion [Doc. 61].

Thus, to answer Defendant's question, Plaintiffs' request for leave to amend is timely, because it took them only two months (during the class discovery period, with Defendant's discovery responses still pending) from identifying concerns about Named Plaintiffs' claims to serving completed discovery responses for a proposed substitute Named Plaintiff, and only one more week to confirm Defendant would not stipulate to substitute Ms. Thorpe as Named Plaintiff and file a Motion seeking this relief. *See Strawhecker v. Laurel Sch. Dist.*, 100 F.R.D. 7, 12 (W.D. Pa. 1983) (a request for leave to amend after two months is timely).

### C. The Court Should Grant Plaintiffs Motion To Compel

Defendant's only opposition to Plaintiffs' request to compel its long-overdue discovery responses is based on incorrect, unsupported, and refuted assumptions that Plaintiffs "do not have any viable claims," so "lack standing to seek or compel discovery." Def. Opp. at pp. 11-12 [Doc. 63]. *See* Plaintiffs' Mem. at pp. 3-7 [Doc. 61]; Sections II(A)-(B), above. Because these are not winning arguments, Defendants have not raised any objection to the relevance or propriety of Plaintiffs' discovery requests, only two individual Requests directly relate to the identity of the Named Plaintiff, and Defendant's refusal to engage in discovery is both compromising Plaintiffs' ability to comply with the Court's May 28, 2025 class certification briefing deadline and threatening to derail the Court-issued schedule for this action, Plaintiff respectfully submits the Court should order Defendant to promptly answer Plaintiffs' December 2024 discovery requests.

### III. CONCLUSION

Because Plaintiffs' requested substitution will not unduly delay this action, has not been sought in bad faith, is not futile, will not prejudice Defendant, is consistent with this Court's November 27, 2024 Scheduling Order [Doc. 59], and otherwise comports with principles of fairness and efficiency, Plaintiffs respectfully ask this Court to enter their proposed Order: 1)

granting leave to file an Amended Complaint substituting Jefferson Health patient Cathryn Thorpe as Named Plaintiff in their stead pursuant to Federal Rule of Civil Procedure 15(a) and conforming the case caption to reflect this substitution; and 2) compelling Defendant to promptly answer Plaintiffs' December 2024 discovery requests [Doc. 61-5].

Respectfully submitted,

Dated: May 7, 2025   */s/ David J. Cohen*
David J. Cohen
STEPHAN ZOURAS, LLC
604 Spruce Street
Philadelphia, PA  19106
(215) 873-4836
dcohen@stephanzouras.com

James B. Zouras
STEPHAN ZOURAS LLC
222 W. Adams Street, Suite 2020
Chicago, Illinois 60606
(312) 233-1550
jzouras@stephanzouras.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies to causing a copy of the foregoing Reply to be served upon all record counsel by electronically filing this document today *via* this Court's ECF system.

Dated: May 7, 2025   */s/ David J. Cohen*